**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| SADIE M. ROBINSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | |
| | * | CIVIL ACTION NO. 20-00424-B |
| KILOLO KIJAKAZI, | * | |
| Acting Commissioner of | * | |
| Social Security, | * | |
| | * | |
| Defendant. | * | |

**ORDER**

Plaintiff Sadie M. Robinson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. On November 4, 2021, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case. (Doc. 23). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 26). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.    **Procedural History**[1]

Plaintiff protectively filed her application for benefits on November 1, 2018, alleging disability beginning October 25, 2010. (Doc. 13 at 54, 161).  She alleged disability based on arthritis, a right ankle injury, and depression.[2]  (Id. at 176).  Plaintiff later amended her alleged disability onset date to November 1, 2018.[3]  (Id. at 20, 36, 157).  Plaintiff's application was denied at the initial stage.  (Id. at 64, 66).  Upon Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on October 1, 2019.   (Id. at 31, 71, 119).   Plaintiff, who was represented by counsel, attended the hearing by videoconference and provided testimony related to her claims.  (Id. at 37-46).  A vocational expert ("VE") also testified at the hearing.  (Id. at

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

[2] Specifically, Plaintiff listed the following as physical or mental conditions that limit her ability to work: "1. Arthritis[;] 2. Right ankle injury[;] 3. Lifting[;] 4. Standing[;] 5. Very severe swelling to my ankle can't wear regular shoes[;] 6. Depression and sad[;] 7. Pains with these screws and hardware in my ankle[;] 8. Severe Limp can't hardly walk[; and] 9. Sitting can't sit too long my ankle swells very severely[.]"  (Doc. 13 at 176).

[3] To be eligible for disability insurance benefits, Plaintiff must demonstrate disability on or before her date last insured.  See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).  Thus, the time period relevant to Plaintiff's disability determination is November 1, 2018, the amended alleged onset date, to December 31, 2018, Plaintiff's date last insured.  See Sonya E. v. Saul, 446 F. Supp. 3d 1287, 1300 (N.D. Ga. 2020).

46-52).   On December 23, 2019, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 18-27). The Appeals Council denied Plaintiff's request for review on June 30, 2020; therefore, the ALJ's decision became the final decision of the Commissioner.  (Id. at 4).

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.   Issues on Appeal

   1. **Whether the ALJ erred in finding that Plaintiff does not meet Listing 1.02?**

   2. **Whether the ALJ's RFC assessment is supported by substantial evidence?**

   3. **Whether the ALJ erred in not applying the Psychiatric Review Technique as to Plaintiff's alleged mental impairment of depression?**

## III. Factual Background

Plaintiff was forty-four years of age at the time of her administrative hearing.  (Doc. 13 at 37).  Plaintiff is 5'6 and weighs 230 pounds.  (Id.).  She graduated from high school and attended vocational school for training to become a certified nursing assistant.  (Id. at 37-38, 177).  Plaintiff worked as a home health aide from 2009 until October 2010.  (Id. at 39, 42, 178, 431).  She returned to work as a home health aide in 2016 and

remained at the job until quitting in October 2018.  (See id. at 38-40, 43, 178, 184, 505).  Plaintiff has also worked as a fast-food cook, fish cleaner, and poultry processing plant line worker. (Id. at 38-39, 178).

On October 25, 2010, Plaintiff was involved in an on-the-job car accident.  (Id. at 431, 522, 598).  Plaintiff was admitted to Southwest Alabama Medical Center, where she was diagnosed with a closed displaced comminuted bimalleolar fracture of the right ankle by Richard Rex Harris, M.D.  (Id. at 598, 613).  On October 27, 2010, Dr. Harris performed surgery involving an anatomic restoration of the fibula using a plate and repair of the plafond and medial malleolus utilizing two screws.  (Id. at 431, 598-99, 613).

After the surgery, Plaintiff continued to have pain and was unable to regain motion in the ankle.  (Id. at 431).  She sought additional orthopedic assessments in January and February 2011. (See id. at 431, 522).  On February 15, 2011, orthopedist John C. McAndrew, III, M.D., diagnosed Plaintiff with probable nonunion of malpositioned right pilon fracture, anatomically healed right lateral malleolus fracture, and tendoachilles contracture with equinus deformity.  (Id. at 431).  On March 28, 2011, Dr. McAndrew performed a second surgery on Plaintiff's right ankle.  (See id. at 228, 384-86).  The surgery involved fusion with a large autograft to the right tibia plateau and right fibula, and removal

of deep hardware. (Id. at 384-86). An external fixation device was applied to Plaintiff's right leg three days later. (Id. at 388-89).

Following the surgery, Plaintiff presented to Dr. McAndrew's office regularly for post-surgical evaluations of her right ankle. (See id. at 446-47, 459, 465-66, 472, 474-75, 477-78, 480-81, 487, 495, 498-99). In July 2011, after a CT scan showed her ankle fusion to be solid, Plaintiff's external fixator was removed, orthopedic shoes with custom cork orthotics were ordered, and Plaintiff started physical therapy to begin weight-bearing and strengthening her right leg. (Id. at 472, 475, 477, 550).

By September 27, 2011, Dr. McAndrew observed that Plaintiff had made good progress in therapy, was now using a quad cane to walk, and was well-adjusted to her custom shoes and orthotics. (Id. at 481). Dr. McAndrew ordered a Functional Capacity Evaluation ("FCE") for Plaintiff's worker's compensation case. (Id.). On October 11, 2011, following Plaintiff's FCE, Dr. McAndrew stated that Plaintiff was "at maximum medical improvement" and was "rendered a 4 percent impairment whole person which is equivalent to 10 percent impairment lower extremity, 14 percent to the foot." (Id. at 487). He gave Plaintiff a prescription for knee high stockings to assist with swelling issues and noted that Plaintiff would require rocker bottom shoes and orthotics for the rest of her life. (Id.).

Plaintiff continued to seek treatment from Dr. McAndrew, and in May 2014, Dr. McAndrew noted that Plaintiff had virtually no pain, had returned to work with restrictions, and was doing very well despite walking with a stiff gait because of her ankle fusion. (Id. at 501).  In October 2017, approximately a year before Plaintiff's amended alleged onset date, Plaintiff reported no pain and no further swelling and was "able to walk pretty well" as long as her customized shoe was in place.  (Id. at 504).  Dr. McAndrew noted Plaintiff was "back at work and works every day."  (Id.).

When Plaintiff next presented to Dr. McAndrew on January 9, 2019, she reported increasing foot pain and stated that she had quit her job because she could not tolerate the prolonged standing. (Id. at 505).  On examination, Plaintiff had no movement around the ankle due to the solid fusion, no tenderness around the ankle, and no swelling, erythema, or sign of infection, but she was very tender and had virtually no clinical motion in the sinus tarsi. (Id.).  Radiographs showed advanced arthritis and subtalar joint, a solid fusion of the ankle, and intact hardware with no signs of loosening or disruption.  (Id.).  Dr. McAndrew explained that Plaintiff's pain was due to arthritis in the adjacent joint, and he outlined treatment options, which included a subtalar fusion surgery, a double-upright locked ankle brace or brace component to her current shoe rig, or anti-inflammatory medication and periodic cortisone injections.  (Id.).  Plaintiff elected to proceed with

a cortisone and procaine injection of the subtalar joint, and Dr. McAndrew wrote a prescription for Mobic.  (Id.).

At her hearing, Plaintiff testified that she is unable to work because of her right ankle injury and arthritis in her right shoulder.  (Id. at 41).  Plaintiff also testified that she is "depressed a lot, and then I'm followed by anxiety, which is the person crying a lot."  (Id. at 45).

## IV.  **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[4]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991).  "Substantial evidence is more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support

---

[4] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  In determining whether substantial evidence exists, a reviewing court must consider the record as a whole, taking into account evidence both favorable and unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, at *4 (S.D. Ala. June 14, 1999).

**V.   Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove her disability.  See 20 C.F.R. § 404.1512. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a).  The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven her disability.  See 20 C.F.R. § 404.1520.

Under this process, the claimant must first prove that she has not engaged in substantial gainful activity during the relevant period.  Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486

(11th Cir. 2015) (per curiam).[5]   The second step requires the claimant to prove that she has a severe impairment or combination of impairments.  Id.  If, at the third step, the claimant proves that her impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  Id.

If the claimant cannot prevail at the third step, the evaluation proceeds to step four, where the claimant must prove an inability to perform her past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC").  See Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite her impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

If the claimant meets her burden at the fourth step, the burden temporarily shifts to the Commissioner to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment that exists in significant numbers

---

[5] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority.  11th Cir. R. 36-2; Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

in the national economy given the claimant's RFC, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove her inability to perform those jobs in order to be found disabled. Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1279 (11th Cir. 2020).

## VI.   The ALJ's Findings

In this case, the ALJ found that Plaintiff has the severe impairments of right nonunion pilon ankle fracture with tendoachilles contracture with equinus deformity, right ankle arthritis, right knee osteoarthritis, and obesity. (Doc. 13 at 21). The ALJ also found that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Id.).

The ALJ found that Plaintiff has the RFC to perform a range of sedentary work, with the following additional limitations: she can never push, pull, or operate foot controls with the right lower extremity; she can occasionally kneel, crouch, stoop, balance, and crawl; she can occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can never be exposed to unprotected heights or moving mechanical parts; she requires a

cane to ambulate; she can tolerate occasional exposure to vibration; and she is able to understand, carry out, and remember simple instructions and make simple work-related decisions. (Id.).  The ALJ found that Plaintiff is unable to perform her past relevant work.  (Id. at 25).  However, based on the testimony of the VE and the record before him, the ALJ found that Plaintiff can perform other jobs that exist in significant numbers in the national economy, such as sorter clerk, optical assembler, and call-out operator.  (Id. at 26-27).  Thus, the ALJ concluded that Plaintiff is not disabled.  (Id. at 27).

## VII. **Discussion**

### 1.   **Substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or equal Listing 1.02.**

Plaintiff first argues that the ALJ erred in finding that her impairments do not meet or equal the criteria for major dysfunction of a joint under Listing 1.02.  (Doc. 19 at 2-8).  Defendant counters that Plaintiff failed to meet her burden of showing that she meets *all* of the criteria of Listing 1.02, because she has not shown a listing-level inability to ambulate effectively.  (Doc. 20 at 8-10).  Having carefully reviewed the record, the Court finds that Plaintiff's claim is without merit.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which

describes impairments considered severe enough to prevent a person from performing any substantial gainful activity.  Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993).  "In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement."  Wilkinson on Behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (per curiam) (emphasis in original).  A diagnosis of a listed impairment alone is insufficient.  Id.  "In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings."  Id. (emphasis in original).

When a claimant contends that she has an impairment meeting a listed impairment, "the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment."  Id.  When the claimant contends that she has an impairment that equals a listed impairment, "the claimant must present evidence which describes how the impairment has such an equivalency."  Id.  An impairment that manifests only some of the criteria of a listed impairment, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

At the time of the ALJ's decision, Listing 1.02 required, in relevant part:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 (2019).

Plaintiff argues persuasively that she satisfies the requirements of Listing 1.02's introductory paragraph, and Defendant pretermits discussion of those criteria. (See Doc. 19 at 3-8; Doc. 20 at 8-9). Instead, Defendant argues that Plaintiff has not established the remaining criteria of Listing 1.02 because she has not demonstrated an "inability to ambulate effectively" as defined in § 1.00B2b. (Doc. 20 at 8-9).

"Inability to ambulate effectively means an extreme limitation of the ability to walk[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1). It is "defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both upper extremities*." Id. (emphasis added). The regulations further provide that, to ambulate effectively,

> individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Id. at § 1.00B2b(2).

Although Plaintiff argues generally that the evidence "thoroughly document[s]" her inability to ambulate effectively even with a cane (see Doc. 19 at 8), there is substantial evidentiary support for the ALJ's conclusion that Plaintiff does not meet the requirements of Listing 1.02, because Plaintiff has failed to provide medical evidence establishing an inability to ambulate effectively, as defined in the regulations, during the relevant period.

At her hearing before the ALJ, Plaintiff testified that she uses a prescribed cane "the majority of the time[.]" (Doc. 13 at 41).  However, the use of a single cane does not, in itself, establish an inability to ambulate effectively for purposes of Listing 1.02.  See, e.g., Rainey-Stiggers v. Comm'r of Soc. Sec., 2015 U.S. Dist. LEXIS 12022, at *13-14, 2015 WL 430193, at *5 (S.D.

Ohio Feb. 2, 2015) ("Although plaintiff wears a 3-D boot and uses a cane to ambulate, use of a single cane does not establish that plaintiff is unable to ambulate effectively for purposes of meeting or medically equaling Listing 1.02A."). Moreover, Plaintiff's testimony implies that she can and does walk at times without the use of *any* assistive device. See Kalishek v. Astrue, 2011 U.S. Dist. LEXIS 107615, at *33, 2011 WL 4389643, at *12 (M.D. Fla. Aug. 23, 2011) ("Plaintiff testified at the hearing that he uses a cane but can walk without it. . . . Thus, Plaintiff has failed to establish that his ankle, knee, and hip impairments wholly precluded his ability to independently ambulate or required him to use a hand-held assistive device that limited the functioning of *both* upper extremities.") (emphasis in original), report and recommendation adopted, 2011 U.S. Dist. LEXIS 107554, 2011 WL 4389717 (M.D. Fla. Sept. 21, 2011), aff'd sub nom. Kalishek v. Comm'r of Soc. Sec., 470 F. App'x 868 (11th Cir. 2012) (per curiam).

The record reflects that, at her FCE on October 7, 2011, Plaintiff used a walker[6] for external support and reported

---

[6] At the FCE, Plaintiff reported that she used a quad cane most of the time but was still getting used to walking using only a cane. (Doc. 13 at 485). The medical record reflects that Plaintiff was still dependent on a walker or crutches for ambulation on August 30, 2011. (Id. at 480). By September 27, 2011, Plaintiff was using a quad cane to walk, but she was still having "some issues with coordination" requiring some support to walk. (Id. at 481).

"difficulty" and "nervousness" with walking activities because she
was still "not used to it" following her injury and surgeries.
(Doc. 13 at 484-85).  It was noted that Plaintiff's walking pace
was very slow, she required frequent breaks and reported general
fatigue during walking activities,[7] she demonstrated an antalgic
gait pattern, she appeared hesitant and uncomfortable during
walking tasks, and her balance appeared very unsteady without the
walker and slightly unsteady even with the walker.  (Id.).  Even
so, Plaintiff demonstrated occasional tolerance for walking and
reported that she could tolerate walking for approximately fifteen
minutes.  (Id.).

      Plaintiff returned eleven days later to complete additional
tasks that were not previously tested due to her use of a walker
at the initial FCE.  (Id. at 489).  During that evaluation,
Plaintiff was able to maximally carry fifteen pounds for a distance
of fifty feet while using her quad cane and was able to ascend and
descend five steps twice using her cane and a handrail for support.
(Id. at 489, 491).  It was noted in the FCE addendum that Plaintiff
appeared unsteady when walking without external support and when
handling weight while walking, her walking pace was slow, her gait
pattern was antalgic, she required frequent rest breaks, and she

---

[7] With respect to her fatigue, the evaluators noted that Plaintiff
"seemed to be very deconditioned due to a long period of inactivity
since onset of her injury."  (Doc. 13 at 486).

appeared hesitant and uncomfortable during walking activities. (Id. at 491).

In arguing that she meets or equals Listing 1.02, Plaintiff relies heavily on these findings from seven years prior to her amended alleged onset date. (See Doc. 19 at 5-7). While Plaintiff appears to imply that her limitations remained unchanged in the years following her 2011 FCE, the record indicates otherwise. In the notes from his yearly evaluations of Plaintiff from 2013 to 2017, Dr. McAndrew consistently stated that Plaintiff's ankle was doing well, and that she had no pain or virtually no pain, mild or no swelling, and was comfortable in her shoes. (See Doc. 13 at 500-04). In October 2017, Dr. McAndrew noted that Plaintiff was "able to walk pretty well, as long as she has her customized shoe in place." (Id. at 504) (emphasis added). Dr. McAndrew also noted more than once that Plaintiff's shoes were "worn" (see id. at 499, 501-04), thereby indicating that Plaintiff was using them to walk. It is also noteworthy that Dr. McAndrew's progress notes after 2011 repeatedly reference Plaintiff's customized shoes but make no mention of a cane or any other assistive device. (See id. at 495, 498-505).

Additionally, the record reflects that Plaintiff's condition improved enough to allow her to return to part-time work as a home health aide from 2016 to 2018, a job that entailed frequent standing, shopping, and heavy lifting. (See id. at 38, 43-44,

165, 178, 184, 504).  Indeed, Dr. McAndrew noted in October 2017 that Plaintiff "works every day."  (Id. at 504).  Although Plaintiff reported increasing foot pain to Dr. McAndrew in January 2019 and stated that she had quit her job because she could not tolerate the prolonged standing, she chose to pursue conservative treatment for her arthritis rather than a subtalar fusion or a brace,[8] and there is no indication that she returned to Dr. McAndrew despite his last note stating that "she will follow back in two months."  (See id. at 505).  The record also reflects that Plaintiff lives alone with her school-age daughter and performs daily activities including household chores, cooking, and cleaning.  (Id. at 37, 45).

Although the evidence clearly demonstrates some limitation of Plaintiff's ability to walk, it does not establish the existence of an *extreme* limitation.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1).  Plaintiff does not require an assistive device that limits the functioning of both arms to walk.  See id.  Nor is there any evidence that Plaintiff lacks the ability to travel without the assistance of a companion.  The facts cited above strongly indicate that Plaintiff can sustain a reasonable walking pace over a sufficient distance to be able to carry out activities

---

[8] Dr. McAndrew discussed the option of a double-upright locked ankle brace with a rocker sole, cushioned insert, but Plaintiff "[did] not think that she [was] willing to wear it at [that] point, so [Dr. McAndrew] did not prescribe it."  (Doc. 13 at 505).

of daily living.  See id. at § 1.00B2b(2).  Thus, Plaintiff has not provided medical evidence demonstrating listing-level inability to ambulate effectively during the relevant period and has consequently failed to demonstrate that she meets or equals *all* of the criteria of Listing 1.02.

To the extent Plaintiff argues that the ALJ was required to provide a more fulsome analysis as to whether she meets or equals Listing 1.02, her claim is without merit.  An ALJ is not required to "mechanically recite the evidence leading to" his step three determination, and an ALJ's determination that a claimant's impairments do not meet listing criteria may be implied from the ALJ's decision.  Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986); see also Turberville ex rel. Rowell v. Astrue, 316 F. App'x 891, 893 (11th Cir. 2009) (per curiam) ("We conclude that—though the ALJ did not explicitly discuss why Rowell did not actually meet Listing 112.05—substantial record evidence supports that Rowell's condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that Rowell was not disabled."); Anteau v. Comm'r of Soc. Sec., 708 F. App'x 611, 614 (11th Cir. 2017) (per curiam) ("[E]ven if the ALJ failed to discuss why Anteau's Asperger's disorder did not meet a listed impairment, substantial record evidence supports the condition did not actually or functionally meet the listed impairment, and therefore, the ALJ's ultimate

conclusion Anteau was not disabled was supported."); Colbert v. Comm'r of Soc. Sec., 2021 U.S. Dist. LEXIS 54416, at *10, 2021 WL 1103692, at *4 (M.D. Fla. Mar. 23, 2021) (finding ALJ's consideration of Listing 1.02 legally sufficient where the ALJ expressly considered whether claimant met or equaled Listing 1.02 and explained generally, in conjunction with his consideration of other relevant listings, "that '[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listings of Impairments'").

At step three of his decision, the ALJ expressly found that Plaintiff does not meet Listing 1.02.   (See Doc. 13 at 21). Although the ALJ did not explain the specific reasoning underlying this determination,[9] he cited evidence elsewhere in his decision

---

[9] The ALJ's decision states:

> The severity of the claimant's physical impairment does not meet or medically equal the criteria of any impairment listed in 1.00, Musculoskeletal System. Specifically, the claimant does not meet Listing 1.02, *Major Dysfunction of a Joint*, because the claimant does not have a gross anatomical deformity and chronic joint pain and stiffness signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s).   With involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle) resulting in an inability to ambulate effectively or involving one major peripheral joint in each upper

to support his conclusion that Plaintiff does not meet or equal Listing 1.02.   For example, the ALJ summarized Plaintiff's treatment records from Dr. McAndrew and specifically referenced the progress notes from October 2017, which stated that Plaintiff was able to "walk pretty well" with her customized shoes and that she was back at work and worked every day.   (See id. at 22-23). The ALJ also noted Plaintiff's choice to proceed with conservative treatment of her adjacent joint arthritis rather than a subtalar fusion or brace.   (See id. at 23).   He further noted Plaintiff's testimony that she uses a cane the majority of the time.   (Id. at 22).

The ALJ's decision demonstrates consideration of the record and Plaintiff's physical conditions in their entirety, and it cites substantial evidence establishing that Plaintiff can ambulate effectively and thus does not meet or medically equal Listing 1.02. As a result, Plaintiff cannot show that remand is warranted with respect to this claim.

### 2. The ALJ's RFC assessment is supported by substantial evidence.

Plaintiff next argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not provide

---

extremity (i.e. shoulder, elbow, or wrist-hand) resulting in an inability to perform fine and gross movements effectively.

(Doc. 13 at 21).

"a sufficient nexus" between the RFC and the medical records. (Doc. 19 at 9). Specifically, Plaintiff contends that the ALJ erred in failing to incorporate certain restrictions based on her October 2011 FCE, which was ordered and overseen by Dr. McAndrew as part of her worker's compensation claim. (Id. at 10-11). Plaintiff also asserts that the ALJ erred in failing to accommodate her need to elevate her leg to alleviate swelling. (Id. at 11-12). Defendant counters that the RFC generously accommodates Plaintiff's credible limitations and properly reflects the significant improvement Plaintiff experienced between her FCE in 2011 and her amended alleged onset date seven years later. (Doc. 20 at 12). Having reviewed the record at length, the Court finds Plaintiff's claims to be meritless.

Relying on the findings from Plaintiff's October 2011 FCE and addendum, Dr. McAndrew stated the following in connection with her worker's compensation case:

- "She is capable of light duty work from knee to overhead with occasional lifting of 25 lbs knee to shoulder, 20 lbs shoulder to overhead and she is not able to lift off the floor. She can frequently lift 10 lbs knee to overhead."

- "On non-material handling she is unrestricted in terms of sitting, cervical rotation, thoracic and lumbar rotation."

- "She can occasionally stand and walk and needs to mix this up during an 8 hour work day."

- "She was not tested on stair climbing, ladder climbing, and challenge balance as all of these are activities

that would probably not be safe for her to do and she
would be restricted anyway in a work environment."

- "She declined kneeling and crawling and she would have
  a difficult time doing both of those in a work
  environment as well."

- "With regards to reaching she is unrestricted.  She is
  also unrestricted in terms of grasping either right
  or left hand and the use of her left foot."

- "She can occasionally use her right foot for foot
  control tasks."

- "She is able to operate a vehicle."

- "The patient does require specific shoewear in terms
  of orthotics and rocker bottom shoes.  This will be
  on a permanent basis for the rest of her life."

- "With regards to carrying, she can maximally carry
  bilateral 15 pounds for a distance of 50 feet.
  Because she uses a cane or a platform cane in her left
  hand, she is not capable of carrying anything in her
  left hand but she is capable of carrying ten pounds
  in her right hand."

- "She is at maximum medical improvement as of 10/11/11
  and is rendered a 4 percent impairment whole person
  which is equivalent to 10 percent impairment lower
  extremity, 14 percent to the foot."

(Doc. 13 at 487, 494).

The ALJ addressed Dr. McAndrew's opinions, as follows:

The October 2011 opinion was a Functional Capacity
Evaluation in which Dr. McAndrew opined that the
claimant was capable of performing light duty work with
restrictions.  He opined that she was at maximum medical
improvement and gave her a 4% impairment whole person,
equivalent to a 10% lower extremity, 14% impairment to
the foot according to the AMA guidelines in reference to
an ankle fusion. . . . [T]his opinion was provided prior
to the amended onset date and will not be considered in
this decision.  Additionally, the ratings and
determinations of separate disability programs are not

23

binding on the Social Security Administration. Without further analysis or explanation of the ratings, it is unclear to what extent the disability ratings directly correspond to work-related limitations. This opinion finds that the claimant is currently disabled; however, statements that a claimant is disabled are administrative findings dispositive of a case that require familiarity with the Social Security Regulations and the legal standards set forth herein.

(Id. at 24-25).

Plaintiff argues that the ALJ erred in failing to specifically address or include certain functional limitations assessed by Dr. McAndrew based on Plaintiff's October 2011 FCE.[10] According to Plaintiff, the limitations listed in the FCE "were clearly **permanent** in nature, and remained continuously unchanged throughout the treatment records, even post-onset date." (Doc. 19 at 10) (bold in original). This assertion is baseless. As discussed previously, the record evidences significant improvement with respect to Plaintiff's ankle and related functional abilities between 2011 and 2018. Indeed, the record reflects that Plaintiff experienced so much improvement that she was able to return to the

---

[10] Plaintiff specifically highlights Dr. McAndrew's restrictions against stair climbing, ramp climbing, ladder climbing, and challenge balance; Dr. McAndrew's statement that Plaintiff would have a difficult time kneeling and crawling in a work environment; and Dr. McAndrew's statement that Plaintiff can maximally carry fifteen pounds bilaterally for a distance of fifty feet, cannot carry anything in her left hand due to the use of a cane, and can carry ten pounds in her right hand. (See Doc. 19 at 10-11). Plaintiff also contends that the ALJ erred in failing to account for observations of the unsteady balance she demonstrated at her FCE. (Id. at 11).

physically demanding occupation of home health aide by 2016 and was able to "walk pretty well" and report no pain and no swelling more than a year later, despite performing that job's prolonged standing requirements on a daily basis. (See Doc. 13 at 503-04). The evident improvement in Plaintiff's functioning after the FCE is unsurprising, given that Plaintiff was not far removed from her second ankle surgery and was still "not used to" performing walking activities when the FCE was performed.[11]  (See id. at 484).  Given Plaintiff's obvious improvement as evidenced by the longitudinal record, the ALJ correctly recognized that the October 2011 FCE is not an accurate assessment of Plaintiff's functioning seven years later.[12]

Plaintiff also argues that the ALJ erred in failing to include

---

[11] The medical record reflects that Plaintiff was entirely non-weightbearing until July 2011, was still dependent on a walker or crutches at the end of August 2011, only started using a quad cane in September 2011, and was still having some coordination issues toward the end of September 2011. (See Doc. 13 at 477, 480-81).

[12] To the extent Plaintiff's brief can be read to challenge whether the ALJ applied the correct legal standards in evaluating the medical opinion evidence, or whether substantial evidence supports that evaluation, those challenges are waived for lack of development. See Bookman v. Comm'r of Soc. Sec., 490 F. App'x 314, 317 n.2 (11th Cir. 2012) (per curiam) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.") (quoting Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1319 (11th Cir. 2012)); Sanchez v. Comm'r of Soc. Sec., 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (noting that because plaintiff did not explicitly challenge the weight given to the medical opinions by the ALJ, plaintiff had "effectively abandoned any challenge to these decisions").

a limitation to account for her need to elevate her leg to reduce swelling in her ankle. (Doc. 19 at 11-12). However, Plaintiff's allegations of significant swelling requiring frequent leg elevation are unsupported by the treatment record, which contains the following notations: "no swelling" in August 2012; "no swelling" in 2013; "swelling in the leg is now resolved" in 2015; "only mild swelling" in 2016; "[s]he does not swell any longer" in 2017; and "no swelling" in January 2019. (See Doc. 13 at 498, 500, 502-05). The ALJ expressly referenced a number of these findings in his summary of Plaintiff's medical records. (See id. at 23). Thus, the ALJ did not err by not adding further RFC limitations to account for Plaintiff's unsubstantiated need to frequently elevate her leg to alleviate swelling.

The Court notes that despite the evident improvement in Plaintiff's symptoms and functional abilities between October 2011 and the amended alleged onset date, the RFC is nevertheless consistent with the FCE in a number of respects. For example, Dr. McAndrew stated, based on the FCE, that Plaintiff was unrestricted in terms of sitting and could "occasionally stand and walk and needs to mix this up during an 8 hour work day." (Id. at 487). Likewise, the RFC limits Plaintiff to sedentary work (id. at 21), under which "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday[.]" Martz v. Comm'r, Soc. Sec. Admin., 649 F. App'x 948, 956 n.7 (11th Cir.

2016) (per curiam) (quoting Soc. Sec. Ruling 83-10, 1983 SSR LEXIS 30, at *13, 1983 WL 31251, at *5 (S.S.A. 1983)).  Also consistent with the FCE, the RFC accounts for Plaintiff's use of a cane to ambulate.  (See Doc. 13 at 21, 494).  The RFC's limitations to occasional stooping and stair climbing are also consistent with Plaintiff's demonstrated tolerance to occasional stair climbing and occasional stooping/bending in the FCE.  (See id. at 21, 490-91).[13]  The RFC is actually more restrictive than the FCE in at least one respect, limiting Plaintiff to never pushing, pulling, or operating foot controls with the right lower extremity, in contrast to Dr. McAndrew's statement that Plaintiff could occasionally use her right foot for foot control tasks and could operate a motor vehicle.  (See id. at 21, 484, 487).  And, contrary to Plaintiff's suggestion that the RFC lacks consideration of her balance limitations, the RFC limits Plaintiff to occasional balancing and no exposure to unprotected heights or moving mechanical parts.  (Id. at 21).

The Court finds that the ALJ's RFC assessment is supported by substantial evidence and sufficiently accounts for the credible

---

[13] Although Dr. McAndrew stated that stair climbing was not tested at the initial FCE and "would probably not be safe for her to do and she would be restricted against anyway in a work environment" (Doc. 13 at 487), the record reflects that Plaintiff subsequently performed stair climbing at her second evaluation, and the FCE addendum listed Plaintiff's demonstrated tolerance to stair climbing as occasional.  (Id. at 490-91).

limitations caused by Plaintiff's right ankle injury, arthritis, and obesity, as reflected in the record.   Indeed, Plaintiff has failed to argue convincingly that any limitations caused by her impairments exceed the RFC and are not accommodated by the RFC and the significant restrictions contained therein.[14]   Accordingly, Plaintiff's claim must fail.

### 3. The ALJ did not err by not applying the Psychiatric Review Technique.

Third and finally, Plaintiff argues that the ALJ erred in his assessment of her alleged mental impairment of depression by failing to complete and attach a Psychiatric Review Technique Form ("PRTF") to his decision or incorporate its mode of analysis into his findings.  (Doc. 19 at 12-14).  Defendant counters that the ALJ was not required to conduct the PRTF analysis because Plaintiff

---

[14] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review.  The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, at *15, 2017 WL 4992021, at *5 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding.  This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.") (emphasis in original).

failed to present a colorable claim of a medically determinable mental impairment. (Doc. 20 at 6-7).

When a claimant presents a colorable claim of mental impairment, Social Security regulations require the ALJ to use the "special technique" dictated by the PRTF for evaluating mental impairments and either append a PRTF to the decision or incorporate its mode of analysis into his findings and conclusions. Moore v. Barnhart, 405 F.3d 1208, 1213-14 (11th Cir. 2005) (per curiam). The PRTF requires that the ALJ assess how the claimant's mental impairments impact the following four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c). If the claimant has presented a colorable claim of mental impairment, and the ALJ has failed to apply the PRTF analysis, remand is required. Moore, 405 F.3d at 1214.

The Eleventh Circuit has yet to define what constitutes a colorable claim of mental impairment in this context. "In general, a 'colorable claim' is one which is not 'wholly unsubstantial and frivolous.'" Jackson v. Astrue, 2012 U.S. Dist. LEXIS 133130, at *20, 2012 WL 4212209, at *7 (S.D. Ala. Sept. 18, 2012) (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946)); see also Dye v. Saul, 2021 U.S. Dist. LEXIS 34213, at *33, 2021 WL 707693, at *11 (S.D. Fla. Feb. 2, 2021) ("A colorable claim triggering a PRT is one

that 'presupposes that there is some possible validity to a claim.'") (quoting Richardson v. United States, 468 U.S. 317, 326 n.6 (1984)), report and recommendation adopted, 2021 U.S. Dist. LEXIS 33182, 2021 WL 705777 (S.D. Fla. Feb. 23, 2021). Additionally, the existence of a colorable claim can be inferred from the ALJ's discussion and analysis of evidence of mental impairments. See Mills v. Comm'r of Soc. Sec., 659 F. App'x 541, 542 (11th Cir. 2016) (per curiam). The "burden is on Plaintiff to present a colorable claim of mental impairment in order to require the ALJ to incorporate the PRT in her decision." Dye, 2021 U.S. Dist. LEXIS 34213, at *33, 2021 WL 707693, at *11.

In support of her assertion that she presented a colorable claim of a mental impairment (depression), Plaintiff points to the following allegations that she made during the pendency of her disability claim:

- In her initial Disability Report - Adult, dated January 8, 2019, Plaintiff listed "[d]epression and sad" as medical conditions limiting her ability to work, and she stated: "I get depressed a lot I'm not able to work and move around like use to."

- In her Disability Report – Appeal, dated February 20, 2019, Plaintiff stated:

    (a) "[My doctor] told me I really don't have a ankle anymore which makes me so sad and depressed."

    (b) "The accident has bothered me both mentally and physically.  I feel like a failure to my daughter. . . . I get discouraged a lot and disappointed."

        (c) "I just get so frustrated I can't what do I use to or go where I need to go. . . . I really get embarrassed and shame that's really frustrating to me. . . . I move very slow and my daughter is a fast mover and she has to help me climb stairs and steps.  That makes me really frustrating and depressed."

        (d) When my daughter and I go places she's a fast walker she has to come back and check on me to make sure I'm ok.  I don't tell her that really makes me embarrassed and shame but I don't tell her.  I'm very sad a lot because I can't move like I use to and go places like I use to. . . . It really bothers me I can't what I use to.  I'm all the time bothered I can't move like I use to I'm so use to being independent. I have to except the fact I'm not able to work and do what I used to.  It's really hard and I get sad and depressed a lot."

    - At her hearing on October 1, 2019, Plaintiff testified: "I'm depressed a lot, and then I'm followed by anxiety, which is the person crying a lot."

(Doc. 13 at 45, 176-77, 199, 202, 204).

    Plaintiff argues that the ALJ was clearly aware of her allegation of a mental impairment because his decision cites the findings of the State agency mental reviewer, Harold R. Veits, M.D., who attempted to complete a PRTF but determined there was insufficient evidence to evaluate the claim because the medical records contained no mental findings and did not establish a medically determinable mental impairment.  (Doc. 19 at 12; see Doc. 13 at 24, 60-61).[15]

---

[15] In support of her third assignment of error, Plaintiff asserts in passing that the ALJ's RFC assessment is not supported by

In response, Defendant notes that Plaintiff never sought nor received treatment for any mental health impairment, that there is no mental health diagnosis in the medical records, and that the

---

substantial evidence because the ALJ incorrectly stated that Plaintiff "is not alleging a severe mental impairment" during his discussion of Dr. Veits' prior administrative medical findings. (Doc. 19 at 13; see Doc. 13 at 24). Assuming *arguendo* that this claim is not waived for lack of development, and that the ALJ erred in stating that Plaintiff was not alleging a severe mental impairment, Plaintiff cannot show harmful error. The ALJ found other impairments to be severe at step two, proceeded to step three, and considered all of Plaintiff's impairments at other steps as demonstrated by his discussion of testimony, medical history, medical opinions, and prior administrative medical findings. See Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 n.3 (11th Cir. 2010) (per curiam) (finding that an error in failing to identify a severe impairment at step two was harmless when (1) the ALJ found that the claimant suffered from other severe impairments; (2) the ALJ continued with the sequential evaluation process; and (3) the ALJ considered all impairments at latter steps of the evaluation process.

The ALJ acknowledged Dr. Veits' determination that there was insufficient evidence to evaluate Plaintiff's claim of mental impairment and properly found this determination to be "consistent with, and supported by, the overall medical evidence in the file[,]" which, as Dr. Veits noted, contained no mental findings from the relevant period and established no medically determinable mental impairment. (See Doc. 13 at 24, 60). Thus, to the extent the ALJ erred in stating that Plaintiff was not alleging a severe mental impairment with respect to her depression, it is clear that this error had no impact on the ALJ's RFC assessment. This is particularly true given Dr. Veits' well-supported determination, and the fact that the ALJ's RFC nevertheless limits Plaintiff to understanding, carrying out, and remembering simple instructions and making simple work-related decisions. (See id. at 21, 25). Plaintiff's cursory argument is devoid of any suggestion that these mental limitations do not accommodate her alleged depression symptoms. Nor does Plaintiff argue that she has a mental limitation that prevents her from performing unskilled work or any of the representative occupations identified by the VE. Accordingly, Plaintiff is entitled to no relief as to her ancillary assertion regarding her depression.

records that happen to mention Plaintiff's demeanor, orientation, understanding, or mental status describe them as normal or unremarkable.  (Doc. 20 at 6-7; see Doc. 13 at 173, 290, 297, 305-09, 311, 376, 414-16, 479, 522, 600, 608, 611).

The Court notes that Plaintiff cites only to her own reports to the Social Security Administration and fails to identify anything in the medical record that would support a finding of a mental impairment.[16]  (See Doc. 19 at 12-13).  Moreover, Plaintiff specifically denied having any past or scheduled future medical treatment for any mental condition and reported taking medication only for pain and arthritis.  (See Doc. 13 at 179, 199-200, 202).

Given the dearth of evidence to support Plaintiff's allegations of depression, the Court finds that Plaintiff failed to present a colorable claim of mental impairment during the relevant time period.  Indeed, district courts within the Eleventh Circuit have found that plaintiffs failed to establish colorable claims in cases where there was much stronger evidence of mental impairments than is present in this case.  See Ramallo v. Comm'r of Soc. Sec., 2021 U.S. Dist. LEXIS 47831, at *16-17, 2021 WL 960687, at *6 (M.D. Fla. Mar. 15, 2021) (finding insufficient evidence to establish a colorable claim of mental impairment

---

[16] The Court's own examination of the record did find "Depression" listed in the "Past Medical/Surgical History" section of Plaintiff's March 2011 hospital records.  (See Doc. 13 at 393, 413, 418).

despite a doctor's notation of a history of depression, plaintiff's statements that she took medication for depression years ago and was currently on Cymbalta, several review of systems findings noting that depression was present, and plaintiff's testimony that she was previously diagnosed with depression but believed it had been stabilized by medication, because the record included no diagnosis of depression, no analysis of the effects of plaintiff's alleged depression, and no history of specialized mental health treatment during the relevant period, and because the State agency mental reviewers found insufficient evidence to substantiate the presence of a depression disorder); Womble v. Comm'r of Soc. Sec., 2016 U.S. Dist. LEXIS 127150, at *10, 2016 WL 4975334, at *4 (M.D. Fla. Sept. 19, 2016) (finding that "the paucity of the evidence in the record failed to give rise to a colorable claim of mental impairment" where plaintiff's alleged depression was mentioned just twice in the medical records, including in a notation by a doctor that he prescribed Cymbalta for plaintiff's back pain and depression, and in a summary by a mental health counselor noting that she had seen plaintiff thirteen times "for individual psychotherapy due to complaints of extensive physical disability, with grief, depression, and anxiety"), aff'd, 705 F. App'x 923 (11th Cir. 2017) (per curiam); Williams v. Astrue, 2011 U.S. Dist. LEXIS 32609, at *61-62, 2011 WL 1131328, at *17-18 (N.D. Ga. Mar. 28, 2011) (finding no colorable claim of mental impairment where

the record showed that plaintiff had been diagnosed with anxiety and had been repeatedly prescribed antidepressants, because the mentions of depression and anxiety in the medical records were "fleeting" and plaintiff had not sought mental health treatment); Meadows v. Astrue, 2010 U.S. Dist. LEXIS 93426, at *15-16, 2010 WL 3614157, at *6 (N.D. Ga. Sept. 7, 2010) (finding no colorable claim of mental impairment despite plaintiff's primary physician noting depression once and anxiety twice and prescribing Wellbutrin, because the physician's notations included no explanations and were "buried in treatment notes" and plaintiff had not sought any mental health treatment even though she alleged suicide ideation, panic attacks, and crying spells); Sesberry v. Astrue, 2010 U.S. Dist. LEXIS 21643, at *10-15, 2010 WL 653890, at *3-5 (M.D. Fla. Feb. 18, 2010) (finding that plaintiff had not presented a colorable claim of mental impairment where his medical record included two notations of depression, a referral to a psychiatrist, and a prescription for an antidepressant, and where plaintiff testified regarding his depression symptoms); Dixon v. Astrue, 2010 U.S. Dist. LEXIS 125831, at *30, 2010 WL 4942141, at *10 (N.D. Fla. Oct. 26, 2010) (holding that a plaintiff failed to present a colorable claim of mental impairment even though his treating physician had diagnosed anxiety and prescribed Xanax after he reported being "stressed"), report and recommendation adopted, 2010 U.S. Dist. LEXIS 125846, 2010 WL 4929045 (N.D. Fla. Nov. 30,

35

2010); <u>Beattie v. Astrue</u>, 2009 U.S. Dist. LEXIS 118800, at *16-18, 2009 WL 4510117, at *5-6 (M.D. Fla. Dec. 1, 2009) (holding that brief hospitalization and treatment for an isolated suicide attempt and diagnosis of major depressive disorder single type were insufficient to establish a colorable claim of mental impairment); <u>Jackson</u>, 2012 U.S. Dist. LEXIS 133130, at *2-4, 24, 2012 WL 4212209, at *1-2, 7 (finding no colorable claim of depression where plaintiff mentioned depression in her application and at her hearing but where the court found only one other reference to depression in a questionnaire completed by plaintiff and indexed among the records submitted by her orthopedic surgeon).

Because Plaintiff failed to raise a colorable claim of depression, the ALJ was not required to complete and attach a PRTF or incorporate its mode of analysis into his findings and conclusions.[17]   As a result, Plaintiff's final claim is without merit.

---

[17] Even if Plaintiff's allegations were found to constitute a colorable claim of depression, she could not meet her burden of establishing harmful error, because the record does not establish a medically determinable mental impairment of depression.   <u>See</u> <u>Ramallo</u>, 2021 U.S. Dist. LEXIS 47831, at *18, 2021 WL 960687, at *6 (alternatively applying harmless error analysis to plaintiff's claim that the ALJ erred in failing to complete a PRTF); <u>Gay v. Astrue</u>, 2012 U.S. Dist. LEXIS 48698, at *20-21, 2012 WL 1161504, at *7 (M.D. Ala. Apr. 6, 2012) (holding that because there was substantial evidence to support the ALJ's conclusion that the claimant's allegations of mental problems were not supported by the record, the ALJ's failure to complete a PRTF was harmless error and not a ground for reversal).

Under the special technique dictated by the PRTF, the first step is determining whether a claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). According to the regulations, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." Id. at § 404.1521. The ALJ cannot rely on a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." Id. If the record establishes a medically determinable mental impairment, the ALJ must evaluate the claimant's limitations in the four functional areas. Id. at § 404.1520a(b)(2). "If not, the ALJ need not." Lopez v. Comm'r of Soc. Sec., 2015 U.S. Dist. LEXIS 187100, at *14, 2015 WL 12844407, at *5 (M.D. Fla. Sept. 25, 2015); see also Coleman v. Colvin, 524 F. App'x 325, 326 (9th Cir. 2013) ("[B]ecause [plaintiff] failed to establish a medically determinable mental impairment, she necessarily also failed to establish a colorable claim of mental impairment such that the ALJ had no duty to apply the special psychiatric review technique and determine her degree of functional limitation.").

By omitting mention of depression at step two entirely, the ALJ implicitly found that depression is not a medically determinable mental impairment for Plaintiff. Plaintiff cannot show that this was error, as the only evidence she cites in support of her claim of depression are her self-reports made in connection with her disability claim, which are insufficient to establish a medically determinable impairment. See Bryant v. Saul, 2021 U.S. Dist. LEXIS 59993, at *16, 2021 WL 1183808, at *7 (S.D. Ala. Mar. 29, 2021) (noting that "self-reported symptoms or conclusory diagnoses . . . are insufficient to establish a medically determinable impairment"); 20 C.F.R. § 404.1521. Because the ALJ properly found that Plaintiff does not have a medically determinable mental impairment of depression, he was not required to rate the degree of functional limitations resulting from such an impairment. See Lopez, 2015 U.S. Dist. LEXIS 187100, at *13-14, 2015 WL 12844407, at *5 (stating that "presentation of a colorable claim of mental impairment does not require the ALJ to evaluate" the degree of functional limitation in the specified areas if the claimant does not have a medically determinable impairment); 20 C.F.R. § 404.1520a(b). Thus, even if the ALJ erred in failing to apply the special technique in his decision, that error had no impact on his ultimate findings, because applying the technique would have merely led to the explicit finding of no medically determinable mental impairment, a finding which is already implicit in the ALJ's decision. Therefore, even assuming arguendo that Plaintiff's

**VIII.**   <u>**Conclusion**</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED**.

**DONE** this **29th** day of **March, 2022.**

<u>          /s/ SONJA F. BIVINS          </u>
**UNITED STATES MAGISTRATE JUDGE**

---

allegations were sufficient to establish a colorable claim of depression, remand would be unwarranted.